GLENN WM. GREEN-EL, #297256      \*
               Petitioner

        v.                  \* CIVIL ACTION NO. AW-08-700

J. PHILIP MORGAN[1] and         \*
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND        \*
           Respondents.

                     \*\*\*

## **MEMORANDUM**

Pending before the court is inmate Glenn William Green-el's Petition for Writ of Habeas Corpus (Paper No. 1), the State's answers thereto (Paper Nos. 11 & 14), and Petitioner's reply briefs. Paper Nos. 12 & 16. After review of these papers, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(e)((2). For reasons that follow, the Petition will be denied and dismissed with prejudice.

## **Procedural History**

On or about January 9, 2004, a criminal complaint was filed against Petitioner in the Circuit Court for Ann Arundel County, Maryland. He was charged with several counts of armed robbery, robbery, first-degree assault, second-degree assault, reckless endangerment, and theft, along with handgun, motor vehicle, and carjacking offenses. Paper No. 11, Ex. 1; *see also State v. Green*, Criminal No. K-2004-000074 (Cir. Ct. for Anne Arundel County).

The facts adduced at trial, as described by the Court of Special Appeals of Maryland, are as follows:

---

[1]     The docket shall be amended to substitute the name of Warden J. Philip Morgan for that of Roderick Sowers.

A jury trial was held in this case from October 5 to October 7, 2004. The State called seven witnesses: David Clickner, Sr., David Clickner, Jr., Christopher Clickner, Eric Green, Officer Steven Saffield, Officer Michael Edmondson, and Corporal Jonas Ignatavicius. Their testimony revealed the following:

At about 7 a.m. on December 11, 2003, David Clickner, Sr. was opening his wood flooring business, Wood Floors Plus, in Glen Burnie. He saw two of his sons, David and Christopher, enter the building followed by two masked men holding guns to their backs. The men forced everyone in the store to the back room and demanded to know the location of the safe. When told there was no safe, one of the men, who was wearing a red jacket, threatened to shoot Christopher in the head. Eventually, the men took a bag containing some cash and checks, along with Clickner Sr.'s and several customers' wallets. They demanded that one of the customers, Eric Green ("Green"), give them the keys to his van. They then let the customers go and drove away.

Clickner Sr. and Green got into a car and followed the van, while Green contacted the police on his cell phone. They followed the van down Ritchie Highway and into a Holiday Inn parking lot, where they saw the two men get out of the van. When the men saw Clickner, Sr. and Green, however, they got back in the van, continued on Ritchie Highway, and drove into a liquor store parking lot. There the men jumped out of the van and ran into a wooded area behind the store. The police told Green not to follow the men into the woods.

Almost immediately thereafter, the police arrived at the liquor store with K-9 units. Clickner, Sr. and Green told the police that one of the men was dressed in black and the other was wearing a red jacket. They further reported that the men were wearing masks and carrying semiautomatic weapons.

The police established a perimeter, and Officers Saffield and Edmondson entered the woods with a tracking dog. Officer Edmondson recovered a green and white canvas bag containing wallets, cash, and checks, by the side of a creek. Officer Saffield stood by the bag while Officer Edmondson and the tracking dog followed the creek bed. Officer Saffield then saw something red in a pile of rotting, wooden telephone poles. He drew his service weapon and discovered two men– the appellant and William Freeman– huddled together in a fetal position inside a gap in the logs. The appellant was wearing a red jacket and had a bandana around his neck.

Officer Saffield took the men into custody and gave them *Miranda* warnings. The police searched the appellant and found about $1,000 in cash in his pocket. They found gloves, masks, and a hat by the pile of telephone poles. They also recovered a black and silver BB gun from a ravine near the creek.

The police brought the appellant and Freeman to Clickner, Sr., who recognized them as the robbers, based on their clothing and builds. Green also recognized the men as the robbers because of their clothing– including their boots, jeans, jackets, hats, and

bandanas. The defense's theory at trial was that another man, not the appellant, committed the robbery with Freeman. The defense called Tammy Jacobs, the appellant's girlfriend; Freeman; and the appellant.

Jacobs testified that, on the morning in question, she was driving with the appellant on I-495 when he asked her to exit the highway and stop someplace where he could urinate. She drove into the parking lot of a liquor store. After the appellant got out of the car, Jacobs saw a van pull into the parking lot. Police cars then drove up and the police officers told her to leave the area. She drove to a nearby gas station, waited for a while, and tried to call the appellant on his cell phone. When he failed to respond, she left to go to work.

Freeman testified that he pleaded guilty to armed robbery for the incident in question and was currently serving a prison sentence for that conviction. He claimed to have committed the robbery with someone named "Peanut," and not with the appellant. According to Freeman, only after he was apprehended by the police did he see the appellant in the area of the liquor store. He testified that the appellant was wearing a black or dark blue jacket at that time.

The appellant testified as follows. After he got out of Jacob's car, he went behind the liquor store to urinate. He then saw two men with guns jump out of a van in the parking lot. He has a large sum of money in his pocket that he planned to use for gambling. He ran into the woods because he feared he would be robbed. When he saw a large pile of logs, he hid in it. He was wearing a Detroit Pistons jacket. He admitted that he was currently serving a five-year sentence for distribution of heroin, that he had several convictions for distribution of illegal drugs and possession with intent to distribute illegal drugs, and that he had been convicted at least twice of felony theft.

As mentioned above, on October 7, 2004, the jury found appellant guilty of six counts each of armed robbery, first and second-degree assault, and reckless endangerment; two counts of use of a handgun in the commission of a felony or crime of violence; one count each of armed carjacking and conspiracy to commit armed robbery; and other related offenses. He was sentenced on December 6, 2004, and thereafter noted a timely appeal. We shall recount additional facts as pertinent to the issues.

Paper No. 11, Ex. 8 at pps. 2-6.

After conclusion of the state's case, Circuit Court Judge Joseph P. Manck granted the

defense motion to dismiss as to counts of armed robbery, robbery, first- and second-degree assault,

and reckless endangerment involving one victim, Carl Harrison. *Id.*, Ex. 2, Tr. at 97-98. At the

3

conclusion of the defense's case, the state abandoned the counts of unauthorized use, carrying of a handgun, and use of handgun in commission of a crime of violence. Paper No. 11, Ex. 3, Tr. at 165-167. A jury deliberated and convicted Petitioner of six counts of armed robbery, five counts of robbery, six counts of first-degree assault, six counts of second-degree assault, six counts of reckless endangerment, two counts of handgun offenses, one count of armed carjacking, and various counts of theft, car theft, and conspiracy to commit armed robbery.[2] *Id.*, Ex. 4, Tr. at 9-14. On December 6, 2004, Judge Manck sentenced Petitioner to serve a cumulative 20-year sentence in the Maryland Division of Correction as to all convictions. *Id.*, Ex. 5, Tr. at 22-23.

Petitioner raised the following claims to the Court of Special Appeals of Maryland:

1.    The trial judge erred in permitting a state's witness to offer identification evidence that was not disclosed in discovery and was more prejudicial than probative;

2.    The trial court committed plain error by instructing the jury on alternative theories of both first- and second- degree assault without explaining that the jurors must unanimously agree on a particular theory before returning a guilty verdict on either charge;

3.    The evidence was insufficient to support the convictions of first-degree assault;

4.    The evidence was insufficient to sustain the convictions for reckless endangerment;

5.    The evidence was insufficient to sustain the convictions for use of a handgun in the commission of a felony or crime of violence;

6.    The State engaged in improper closing argument; and

7.    The evidence of identity was insufficient to sustain the convictions.

Paper No. 11 at Exs. 6-8.

---

[2]    A count of robbery as to Christopher Clickner and carjacking of Eric Green were not on the verdict sheet, but were deemed merged into the guilty verdicts of the superior charges. Paper No. 11, Ex. 4, Tr. at 16-17.

In an unreported opinion of March 29, 2006, the Court of Special Appeals of Maryland affirmed Petitioner's convictions. *Id*., Ex. 8. Petitioner's *pro se* request for further appellate review was denied by the Court of Appeals of Maryland on June 9, 2006. *Id*., Exs. 9 & 10.

On June 1, 2006, Petitioner initiated post-conviction proceedings in the Circuit Court for Anne Arundel County. *Id*., Exs 1 & 11. He raised twenty-two separate grounds of ineffective assistance of trial counsel, most going to witness identification testimony, and nine grounds of prosecutorial abuse. Paper No. 11, Exs. 11-13.

A post-conviction hearing was held on April 6, 2007, before Circuit Court Judge Nancy L. Davis-Loomis. *Id*., Ex. 12. By order filed on August 3, 2007, the circuit court denied post-conviction relief. *Id*., Ex. 13. Petitioner sought leave to appeal all claims raised on post-conviction review to the Court of Special Appeals of Maryland. *Id*., Ex. 14. In an unreported opinion filed on March 6, 2008, the Court of Special Appeals denied the application for leave to appeal without comment. *Id*., Ex. 15.

In this habeas corpus action, his first in federal court, Petitioner asserts that:

1.     Trial counsel was ineffective for:

      A.     informing the prosecutor of the expected testimony of defense witnesses, thus allowing the prosecutor to place witness testimony on the stand during the State's case which helped to impeach "all of the defense['s] expected testimony" prior to the presentation of the defense case;

      B.     revealing to the prosecutor that a piece of identification evidence, a red jacket allegedly worn by a perpetrator, did not exist;

      C.     failing to proceed with the suppression hearing;

      D.     failing to introduce witness statements, police reports, hospital records, and photographs to establish the limits of witness identification;

E.      failing to object to trial testimony regarding identification clothing and money recovered;

F.      using his investigator to improperly attempt to coerce co-defendant Wayne Freeman to implicate Petitioner and possibly Petitioner's girlfriend;

G.      failing to preserve evidentiary rulings for appellate review;

H.      failing to interview the State's witnesses prior to trial;

I.      failing to impeach the inconsistent testimonies of David Clickner Sr., Christopher Clickner, David Clickner Jr., and Eric Green by introducing their prior inconsistent statements;

J.      improperly aiding Officer Edmondson's testimony; and

K.      prejudicing Petitioner's right to a fair trial due to the cumulative effect of his errors; and

2.      The prosecutor committed misconduct by:

A.      improperly offering into evidence identification clothing and police photographs;

B.      improperly impeaching the testimony of Wayne Freeman, Tammie Jacobs, and Petitioner by using protected information provided to him by defense counsel;

C.      making improper comments during closing arguments by labeling the money found as Petitioner's "drug" proceeds;

D.      Improperly badgering and coercing Wayne Freeman's testimony on cross-examination that portrayed Freeman "as scared to rat [Petitioner] out;"

E.      colluding with defense counsel to undermine the defense;

F.      committing a discovery violation under Maryland law by failing to disclose full identification provided by witnesses; and

G.      offering prejudicial comments during opening statement regarding Petitioner's alleged presence around the business

6

the night before the robbery; and

3.  A state's witness gave identification evidence that was not disclosed in discovery; and

4.  The evidence offered during trial regarding identity of the suspects was insufficient to establish guilt.

Paper No. 1.

## I. Threshold Considerations

### A.  Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing remedies available in state court.  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  *See* 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking certiorari to the Court of Appeals) and with other claims by way of  a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals.   Petitioner no longer has any direct or collateral review remedies available to him with respect to the claims raised in this court.  Accordingly, his claims will be considered  exhausted for the purpose of federal habeas corpus review.

### B. Statute of Limitations

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. § 2244(d).

### C.  Procedural Default

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court.  *See Rose v. Lundy*, 455 U. S. 509, 521 (1982).  This exhaustion requirement is satisfied by seeking review of the claim in the

highest state court with jurisdiction to consider the claim. *See  O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728 (1999); 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by raising certain claims on direct appeal and with other claims by way of post-conviction proceedings. Exhaustion is not required if at the time a federal habeas corpus petition is filed the petitioner has no available state remedy.  *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal);  *Murray v. Carrier*, 477 U. S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *See Murray*, 477 U.S. at 495; *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977).  Even where a petitioner fails to show cause and prejudice for a procedural default a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice.  *See Schlup v. Delo*, 513 U. S.298, 314 (1995); *Bostick v. Stevenson*,  589 F.3d 160, 164 (4th Cir. 2009).  The miscarriage of justice standard is directly linked to innocence.  *Schlup*, 513 U.S. at 320.  Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted.  *Id*. at 315; *see also Wolfe v. Johnson*, 565 F.3d 140, 144 (4th Cir 2009).  The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually

innocent." *Murray*, 477 U. S. at 496.

Respondents claim that Petitioner's sixth and seventh prosecutorial abuse claims regarding witness identification disclosure and prejudicial opening statements were not presented to the state post-conviction court and are thereby defaulted. They also argue that as Petitioner's first, second and third prosecutorial abuse claims regarding the introduction of police photographs and clothing, improper impeachment of defense witnesses, and improper closing arguments were deemed to be waived by the post-conviction court due to Petitioner's failure to object at trial, *see* Paper No. 11, Ex. 13 at pps.18-20, they are likewise procedurally defaulted. Finally, Respondents assert that the ground going to state's witness identification that was not disclosed in discovery is procedurally defaulted as it was not pursued in state court as a federal claim, but was rather presented as a claim of state law.

Petitioner was given an opportunity to file a reply explaining why these claims should not be procedurally defaulted. Paper No. 16. He claims that the prosecutorial abuse claim regarding identification disclosure was raised in the post-conviction petition and in argument; that the prosecutorial abuse claim regarding the states' attorney prejudicial opening argument was raised on direct appeal; that his first prosecutorial abuse claim regarding the presentation of evidence of clothing and photographs was not knowingly waived; and that his third prosecutorial abuse claim be dismissed without prejudice as "the state has re-worded and structured [the claim] in a manner that has nothing to do with my original claim." After review of the state court transcripts, appellate and post-conviction briefs and opinions, the court agrees with Respondents and finds these grounds to be defaulted.

Petitioner further argues that the failure to address these claims on the merits would enable the state to effect the conviction of an innocent man and it would be in the interests of justice to

consider the claim on the merits.   Paper No. 16 at pps. 6-8.  Petitioner focuses on the state's failure to produce the red jacket alleged to have been worn by one of the perpetrators and the testimony by a state's witness and discussed in opening argument that a person was seen around the business property, clad in a red jacket, the night before the crime who appeared to be casing the area.  Paper No. 16 at  pps. 7-8.  Given the record before this court, his response fails to make the requisite showing under *Schlup* which would enable the undersigned  to consider his defaulted claims. Petitioner's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.

## II.  <u>Analysis of Petitioner's Undefaulted Claims</u>

### Standard of Review

Because the Petition was filed after April 24, 1996, it will be decided under amendments to the habeas corpus statutes contained in Anti-terrorism and Effective Death Penalty Act ("AEDPA"). *See Brown v. Angelone*, 150 F.3d 370 (4th Cir. 1998).  Under the AEDPA, federal courts conducting habeas corpus review no longer can correct mere error in state court proceedings, but must instead exercise a more limited review set forth in 28 U.S.C. § 2254(d)(1) and (2)(as amended). Section 2254(d) now provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), the Supreme Court characterized 28 U.S.C. § 2254(d) as a "new, highly deferential standard for evaluating state court rulings."  In

*Williams v. Taylor*, 529 U.S. 362, 407-08 (2000), Justice O'Connor, speaking for the majority, further elucidated:

> Section 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under Section 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to...clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of...clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-413. Justice O'Connor indicated that "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States'...refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore, she indicated that:

> [u]nder Section 2254(d)(1)'s 'unreasonable application clause...a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 411. In other words, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 410. A state court decision involves an "unreasonable application" of Supreme Court precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id*. at 407-08, or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have

controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000); *see also Booth v. Nuth*, 288 F.3d 571 (2002).[3]

The Court reaffirmed and applied these standards in an ineffective assistance of counsel context in *Bell v. Cone*, 535 U.S.685 (2002).   It explained:

> For respondent to succeed, however, he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. See *Williams,* supra, at 411.   Rather, he must show [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Id*. at 698-9.

"The federal habeas statute dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt. The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington,* 444 F.3d 295, 299 (4th Cir. 2006) (internal quotation marks and citation omitted). "The question ... is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold." *Schriro v. Landrigan,* 127 S.Ct. 1933, 1939 (2007). Thus, where the state court has adjudicated a claim on the merits, federal habeas relief is appropriate only if the state court's judgment resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination

---

[3]     A decision is contrary to the Supreme Court's clearly established precedents if the state court applied a rule that contradicts the governing law set forth in the Court's cases, or if it confronted a set of facts that is materially indistinguishable from a decision of the Court but reached a different result. *See Brown v. Payton*, 544 U.S. 133, 141 (2005). A decision constitutes an unreasonable application of the Court's clearly established precedents if the state court applied the Court's precedents to the facts in an objectively unreasonable manner. *Id.* In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Green v. Johnson*, 515 F.3d 290, 298-299 (4th Cir. 2008). In sum, § 2254(d) imposes a highly deferential standard for evaluating state-court rulings and demands that the state-court decisions be given the benefit of the doubt. *See Renico v. Lett*, --- S.Ct.---, 2010 WL 1740525 at *6 (U.S. 2010).

Further, the court presumes that factual determinations made by the state court are correct. Petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). With these standards in mind, the court shall consider the undefaulted claims.

### Claims of Ineffective Assistance of Trial Counsel

To establish a claim of ineffective assistance of trial counsel, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). With regard to the first prong of this test, this Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. All circumstances are to be considered, and this Court's scrutiny of counsel's conduct must be "highly deferential." *Id*. at 688-89. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Petitioner has raised eleven separate grounds of ineffective assistance of counsel. As noted by Respondents, these errors are best categorized as errors of *commission* and *omission*.

Petitioner contends that he was denied effective assistance of counsel when trial attorney Richard Simmons: (1) informed the prosecutor of the expected testimony of defense witnesses Tammie Jacobs, William Freeman, and Petitioner; (2) revealed to the prosecutor that no red jacket existed; (3) used his investigator to coerce co-defendant William Freeman to implicate Petitioner and his girlfriend Tammie Jacobs; (4) aided Officer Edmondson's testimony; and (5) denied Petitioner his right to a fair trial due to the cumulative effect of his errors.

In her post-conviction ruling with regard to these ineffective assistance claims, Judge Davis-Loomis made the following observations under a *Strickland* analysis:

> Trial counsel presented Petitioner's defense through the testimony of Tammie Jacobs, William Freeman, and Petitioner. Tammie Jacobs, Petitioner's girlfriend, testified that Petitioner was with her at the time the crime was committed. She also testified that Petitioner was wearing a black Pistons jacket at that time. William Freeman, the co-defendant, testified that he committed the crime with a man nicknamed 'Peanut.' Freeman claimed that he never met Petitioner prior to following him into the woods behind the liquor store. Petitioner testified that he went behind the liquor store to urinate and that he was not wearing a red jacket. Petitioner argues that trial counsel informed the State's Attorney prior to trial that Petitioner's witnesses were going to testify that Petitioner was urinating behind the liquor store and not wearing a red jacket. Therefore, the State's Attorney was able to address these issues prior to the testimony being offered.

> Relief on this allegation is denied. There is no evidence to support this allegation. Trial counsel informed the State's Attorney of the existence of an alibi witness, not the expected testimony of the witness. The State's Attorney could determine how an alibi witness would testify without the aid of trial counsel. Also, the State's Attorney was able to determine that a red jacket was not recovered by reviewing the evidence that was collected. Therefore, this allegation is denied as a bald allegation.

Paper No. 11, Ex. 13 at pps. 5-6.

Judge Davis-Loomis also examined Petitioner's claim that Mr. Simmons improperly revealed to the State's Attorney that there was no red jacket in evidence. The "red jacket" was described as being worn by one of the suspects in multiple victims' statements, but was never recovered at the scene of Petitioner's arrest, nor was Petitioner wearing the red jacket at the time of his arrest.

Petitioner argues that by being provided this information before trial, the State's Attorney was able to "reconstruct" his prosecution to refrain from focusing on the red jacket and to elicit trial testimony from victims that one of the suspects was wearing light blue jeans and tan boots. Judge Loomis-Davis found no evidence of ineffective assistance of counsel as to this issue:

> Relief on this allegation is denied. Trial counsel testified at the post-conviction hearing that the lack of a red jacket came up during plea negotiations. Trial counsel used the lack of a red jacket as a bargaining chip. This was sound strategy to attempt to obtain the best possible plea agreement for Petitioner.
>
> There is no evidence to support the claim that the State's Attorney reconstructed evidence. The State's witnesses still testified that one of the men that robbed the store was wearing a red jacket even though no jacket was recovered. *Trial Transcript*, October 5, 2004, at 99; *Trial Transcript*, October 6, 2004, at 11, 29. Moreover, Petitioner was actually wearing light blue jeans and tan boots when he was arrested. Therefore, the Court finds that there is no evidence to support the claim that trial counsel improperly informed the State's Attorney of the absence of a red jacket.

Paper No. 11, Ex. 13 at pps. 6-7.

Petitioner next complains that trial attorney's investigator improperly attempted to coerce co-defendant William Freeman, and possibly Tammy Jacobs, to implicate Petitioner. Judge Davis-Loomis denied this Sixth Amendment claim for the "failure to [prove] this allegation" as nothing more than a "bald" ground. She noted that:

> Trial counsel's investigator interviewed Freeman prior to his testifying at trial. The investigator's purpose was to determine if there was another person involved in the
>
> robbery. The investigator determined that Freeman was not credible and would be of no help to Petitioner.
>
> The Court finds that Petitioner has not proven this allegation. Petitioner has not proven sufficient facts to show that the investigator attempted to persuade Freeman to implicate Petitioner. The Court shall deny this allegation as a bald allegation.

Paper No. 11, Ex. 13 at pps. 12-13.

15

Petitioner next claims that trial counsel Simmons improperly aided Officer Edmondson's testimony. Judge Davis-Loomis conducted a post-conviction review of the claim and found:

> Officer Edmonson testified about his actions at the scene of the arrest. Officer Edmonson was on the scene when Petitioner was apprehended along with the co-defendant. Officer Edmonson testified that Petitioner was arrested while hiding with the co-Defendant, that Petitioner was wearing a red jacket when apprehended, and that there was no evidence of another suspect being in the area. *Trial Transcript,* October 6, 2004, at 57. Trial counsel cross-examined Officer Edmonson regarding his movements during his search and how thoroughly he searched for any other suspect. Petitioner argues that trial counsel helped to keep Officer Edmonson from contradicting the testimony of Officer Saffield.

> Relief on this allegation is denied. Petitioner has the burden of proving the allegations made. *State v. Hardy*, 2 Md. App. 150, 156 (1967). No evidence has been presented to the Court showing trial counsel aided Officer Edmonson's testimony. Therefore, this allegation is denied as a bald allegation.

*Id.*, Ex. 13 at p. 17.

Petitioner further claims that trial counsel failed to: (1) proceed with the suppression hearing; (2) introduce witness statements, police reports, hospital records and photographs to call into question the state's witness testimony regarding the identity of the offenders; (3) object to trial testimony regarding identification of clothing and recovered money; (4) preserve evidentiary rulings for appellate review; (5) interview state's witnesses prior to trial; and (6) impeach the inconsistent testimonies of David Clickner, Christopher Clickner, David Clickner Jr. and Eric Green by introducing their prior inconsistent statements.

Judge Davis-Loomis addressed the suppression issue on post-conviction review. She made the following observations:

> Trial counsel filed a pretrial motion to suppress the witnesses' on-the-scene identification of Petitioner. These identifications were based on Petitioner's clothing and posture. Trial counsel dropped this motion during plea negotiations. *Hearing Transcript,* March 12, 2004, at 5-6. Trial counsel determined that the likelihood of winning the suppression hearing was low. Therefore, trial counsel decided that the jury was best suited to determine the reliability of the identification.

Petitioner argues that he was adamant in his request to pursue the suppression hearing and the failure to do so constitutes ineffective assistance of counsel.

Relief on this allegation is denied. Trial counsel is not required to make an argument that counsel has good reason to believe will not be accepted by the court. *Carter v. State*, 73 Md. App. 437, 435 (1988). Trial counsel believed there was no chance for the motion to be granted. *See Hearing Transcript*, March 12, 2004, at 2-3. A witness identification based on a physical description of the suspect is sufficient for a jury to consider. *Holland v. State*, 154 Md. App. 352, 383-84 (2003). Therefore, trial counsel made a tactical decision that the best strategy was to prove to the jury that the identifications were unreliable. The fact that trial counsel's strategy was unsuccessful does not constitute ineffective assistance of counsel.

Paper No. 11, Ex. 13 at pps. 7-8.

Petitioner also raised on post-conviction review his claim that trial counsel failed to introduce witness statements, police reports, hospital records, and photographs to establish that the witnesses' identification testimony at trial differed from their statements given and reports made at the time of the crime. The post-conviction court analyzed the facts and denied relief. Judge Davis-Loomis found that:

Four witnesses from the night of the incident testified for the State. Their testimony identified Petitioner as being one of the robbers. On the night of the incident, each witness provided a witness statement to the police that identified one of the robbers as wearing a red jacket. The witness statements were silent as to any other article of clothing the robbers were wearing. However, at trial the witnesses testified that the robber had on a red jacket as well as light blue jeans and tan boots. Trial counsel did not introduce the witness statements into evidence. Petitioner argues that trail counsel erred by not entering the statements into evidence to impeach the witnesses.

Petitioner was apprehended as he hid in a woodpile with the co-defendant. Police then searched Petitioner and found a large amount of money in his pocket. The police reports state that the money was taken from Petitioner's front right pocket. However, the money was actually taken from Petitioner's front left pocket. Petitioner argues that trial counsel should have introduced the police reports to impeach the officer's testimony.

Petitioner also contends that trial counsel should have introduced a photograph showing his hair color at the time of the incident as well as his hospital records to show that he did not commit the crime. Petitioner argues that the hospital records would prove that he was not in the physical condition to commit the crime.

17

Relief on this allegation shall be denied. The hospital records that Petitioner requested showed Petitioner being admitted under different names. Trial counsel believed that this evidence would be more harmful than helpful. The records could lead the jury to believe that Petitioner was a fraud. Therefore, not offering the records was a trial tactic in support of sound trial strategy.

The failure to introduce the police reports or photographs also does not constitute ineffective assistance of counsel. Determining which pocket the money was recovered from or which assailant was removed from the woodpile first is irrelevant. Offering a particular photograph into evidence showing Petitioner's hair would be cumulative. There were other photographs already in evidence that showed Petitioner's hair color. Therefore, Petitioner was not prejudiced, as required by *Strickland*, by trial counsel's failure to introduce these items into evidence.

The failure to offer the witness statements into evidence did not prejudice Petitioner. Petitioner would receive a minor benefit from showing that the witnesses did not mention the light blue jeans and tan boots when making their statements. However, the statements would also bolster the witnesses' testimony because the witnesses still testified at trial that Petitioner was wearing a red jacket, even though one was never recovered. Therefore, the decision to not offer the statements into evidence was a trial tactic and is not ineffective assistance of counsel.

Paper No. 11, Ex. 13 at pps. 8-10.

Petitioner next complains that trial counsel failed to object to trial witness testimony and evidence regarding the clothing of the suspects and to testimony regarding the $1,009.00 in cash found on him to "be assumed to be part of the robbery proceeds."

On post-conviction review, Judge Davis-Loomis denied relief. She noted that trial counsel is not ineffective for failing to object to admissible evidence or to pursue motions that have no merit. The Judge opined that:

Trial counsel had no basis to object to witness testimony regarding Petitioner's attire, the photograph of Petitioner, or the State's closing argument. The witnesses testified to their recollection of Petitioner's attire at the time of the incident. Trial counsel attempted to impeach the testimony based on witnesses' description of Petitioner wearing a red jacket that was never recovered. The photograph of Petitioner showed his appearance and attire when he was processed at the detention

center. The photograph was relevant because it supported the identification testimony. Trial counsel attempted to make the jury aware that Petitioner was not wearing a red jacket in the photograph. These were tactical decisions made by trial counsel.

Trial counsel had no basis to object to the State's Attorney's closing argument. During closing, the State may summarize the evidence and present any reasonable inferences that can be made from the evidence. The State's reference to Petitioner's money was a reasonable inference from the evidence. Any objection by trial counsel may have caused the jury to consider the lack of a reasonable explanation for Petitioner having a large sum on money. Thus an objection may have given more credibility to the State's Attorney's theory. Therefore, there was not ineffective assistance because this was trial strategy.

Paper No. 11, Ex. 13 at pps. 11-12.

In a bald and general assertion, Petitioner claims that trial counsel failed to preserve evidentiary rulings for appellate review. He claims this prejudiced his case as there was insufficient evidence to establish guilt.

It appears that this ground was raised on post-conviction review as Petitioner's Sixth Amendment claim concerning counsel's failure to make a motion for acquittal. The post-conviction court denied relief, finding that the failure of trial counsel to make a motion for judgment of acquittal does not necessarily make counsel ineffective. Judge Davis-Loomis found that Petitioner had not been prejudiced by the omission, noting that:

At the close of the State's case, trial counsel made a motion for judgment of acquittal for all charges in which Carl Harrison was named as the victim. Trial counsel argued that there was no evidence submitted showing that any crime was committed against Carl Harrison. The State's Attorney agreed and the Court granted the motion. Next, trial counsel made a motion for judgment of acquittal for the reckless endangerment counts. Trial counsel argued that the conduct described were all intentional acts, including a gun being pointed at a victim's head. Because reckless endangerment requires gross negligence, trial counsel argued that these counts should be dismissed. The Court initially reserved judgment and then later denied the motion.

At the close of all evidence, trial counsel renewed the previously made motion for

judgment of acquittal.  The Court again denied trial counsel's motion.

Petitioner later appealed his conviction to the Court of Special Appeals, arguing that the evidence was insufficient to support his convictions for first-degree assault, reckless endangerment, and use of a handgun.  He specifically argued that the identifications were insufficient to show criminal agency and that the convictions cannot be upheld because the only gun found was a BB gun.  The Court of Special Appeals found that the identifications were sufficient to show criminal agency.  It also found that Petitioner failed to preserve the BB gun argument for appellate review because it was not made in a motion for judgment of acquittal at the jury trial.

Relief on this allegation is denied.  Trial counsel must make a motion for judgment of acquittal in order to preserve the issue of the sufficiency of evidence for appellate review.  MD. RULE 4-324(a) 2007.  The failure to make a proper motion does not necessarily make counsel ineffective.  The Court must determine if the evidence was sufficient to uphold the conviction.  *Mosley v.* State, 378 Md. 548 (2003).  The Petitioner has not been prejudiced if the evidence presented at trial was sufficient to establish guilt.  The Court of Special Appeals determined on direct appeal that there was sufficient criminal agency to establish guilt.  Therefore, Petitioner cannot receive post-conviction relief based on the argument because the issue has been finally litigated.

Petitioner cannot be afforded post conviction relief because trial counsel did not preserve the BB gun argument.  Witness testimony that an actual handgun was used during the commission of a crime is sufficient evidence to support a conviction.  *Curtin v. State*, 165 Md. App. 60, 70-71 (2005).  Here, the witnesses testified that both robbers were carrying handguns.  The police were able to recover only one gun.  The witness testimony was sufficient to support the convictions.  Therefore, Petitioner was not prejudiced by trial counsel's failure to preserve this argument for appellate review as required by *Strickland*.

Paper No. 11, Ex. 13 at pps. 13-15.

Petitioner also challenges trial counsel's failure to interview state's witnesses prior to trial.

This claim was raised on post-conviction review and denied.  Judge Davis-Loomis found that there

was no evidence to support this allegation.  She concluded that:

Trial counsel testified at the post-conviction hearing that he had interviewed David Clickner, Sr.  David Clickner, Sr. was at the scene when Petitioner was apprehended and gave a statement to the police identifying Petitioner by his red jacket.  Trial counsel chose to impeach the witness's statement in front of the jury instead of prior to trial.  At trial, trial counsel was able to highlight the inconsistencies in the witness's statements for the jury.  This is sound trial strategy and does not constitute

ineffective assistance of counsel.

*Id*., Ex. 13 at pps. 15-16.

Petitioner next claims that defense counsel failed to impeach the testimonies of David Clickner Sr., Christopher Clickner, David Clickner Jr., and Eric Green by introducing their prior inconsistent testimonies. The post-conviction court noted that:

> The witness identification in this case was based on the clothing and posture of Petitioner. The red jacket that the witnesses recalled Petitioner wearing was never recovered. However, the witnesses were still able to identify Petitioner by his clothing and posture. Petitioner argues that trial counsel failed to question David Clickner, Sr. about his testimony that Petitioner was not wearing a red jacket at the time of his arrest. Petitioner also argues that trial counsel erred by not questioning the witnesses about not putting the light blue jeans and tan boots in their witness statements, as well as the contradicting testimony regarding Petitioner's age and posture.

> Relief on this allegation is denied. Petitioner is taking issue with trial counsel's strategy for cross-examining the witnesses. Trial counsel was aware of the fact that a red jacket was never located. Trial counsel's strategy throughout the trial was to attack the identifications of Petitioner. The strategy was chosen to highlight the fact that the witnesses saw a man in a red jacket and Petitioner was not wearing a red jacket. Regarding the age and posture testimony, trial counsel questioned the witnesses about whether they could identify Petitioner as the robber in the courtroom based on their own descriptions of his age and posture. This was an attempt made by trial counsel to show the jury that the identifications were not solid. This line of questioning was a tactical decision that was part of trial counsel's trial strategy.

Paper No. 11, Ex. 13 at pps. 16-17.

Petitioner's final Sixth Amendment claim argues that the cumulative effect of trial counsel's errors prejudiced his right to a fair trial. Judge Davis-Loomis denied relief on this claim, concluding that trial counsel's decisions were "thoughtfully considered and carried out in a trial strategy that was believed to be most effective for his client." *Id*., Ex. 13 at p. 18. She found that Petitioner did not establish any of his allegations nor did the number of allegations create any form of cumulative prejudicial effect on the outcome of Petitioner's trial. *Id.*

Having examined the post-conviction court's rulings and having independently examined the record, including transcripts of trial and collateral review proceedings, this court is satisfied that when applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, Petitioner has not demonstrated the prejudice necessary to establish his trial attorney's ineffectiveness. *See* 28 U.S.C. § 2254(d); *see also Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991). The post-conviction court's rejection of Petitioner's claims was neither contrary to clearly-established federal law, nor did it involve an unreasonable application of that law.

### Claims of Prosecutorial Abuse

Petitioner's non-defaulted prosecutorial misconduct claims involve alleged State's Attorneys' errors in badgering and coercing defense witness William Freeman and in colluding with defense counsel to undermine the defense. Judge Davis-Loomis examined the aforementioned prosecutorial abuse grounds on post-conviction review and found no basis upon which to grant relief. Paper No. 11, Ex. 13 at pps. 21-22.

This ruling shall not be disturbed. Based upon the undersigned's review of the trial record, particularly the transcripts involving closing arguments and the examination of the testimony of defense witnesses, the court finds no prejudicial misconduct on the part of the prosecutor that unlawfully burdened Petitioner' rights and so infected the trial with unfairness. *See Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986); *Arnold v. Evatt*, 113 F.3d 1352, 1358 (4th Cir. 1997).

### Sufficiency of Identity Evidence at Trial

Petitioner claims that the evidence offered at trial regarding the identity of the suspects was insufficient to establish guilt. Any challenge to sufficiency of evidence is necessarily a due process challenge. *See West v. Wright*, 931 F.2d 262, 266 (4th Cir. 1991), *overruled on other grounds*, 505 U.S. 277 (1992). In determining whether there is sufficient evidence to support a conviction the

analysis is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (1979). The fact finder, rather than the reviewing court, is charged with "resolv[ing] conflicts in the testimony, [weighing] the evidence, and [drawing] reasonable inferences from basic facts to ultimate facts." *Id.* Circumstantial as well as direct evidence must be considered and the government must be given the benefit of all reasonable inferences. *See United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Circumstantial evidence alone can be sufficient to support a conviction. *Stamper*, 944 F.2d at 174.

On direct appeal, the Court of Special Appeals discussed Petitioner's sufficiency of the identification evidence claim, noting that

> In the instant case, there was considerable eyewitness testimony about the clothing the two robbers were wearing: one wore a red jacket, construction boots, and blue jeans; the other wore a darker jacket, construction boots, and black, faded pants. One of the robbers was taller than the other. One of the robbers also wore a blue bandana around his neck. Both men wore masks fully covering their faces.
>
> After the police removed the appellant and Freeman from the wood pile, Clicker, Sr. made a positive identification of the two men as the robbers, based on their clothing and height. In addition, he made an in-court identification of the appellant as one of the robbers. Green similarly made a positive identification of the two men as the robbers after they were removed from the wood pile, based on their clothing and build from the waist down. In their testimony, the police identified the appellant as one of the men removed from the wood pile.
>
> If fully credited, the identification evidence alone was sufficient to establish criminal agency. Any deficiencies based on the opportunity to observe the robbers went to the weight to be afforded the identifications. Moreover, when coupled with other evidence, specifically that appellant was found in the wood pile with Freeman, who plead guilty to the armed robbery; that the appellant was found in close proximity to other evidence of the crime; and that Green had $1,000 cash on his person, the evidence was more than sufficient to establish criminal agency.

Paper No. 11, Ex. 8 at pps. 17-18.

The State appellate court decision involved a correct application of federal law as well as a

thorough review of the facts adduced at trial.  Upon review of the trial transcript, the court finds that there was sufficient evidence for the jury to reach a guilty finding.  The jury heard testimony from victims, who followed the perpetrators after they fled the scene of the robbery in a customer's stolen vehicle and observed two men enter the wooded area where they were found together by police. Petitioner was identified at the scene as one of the perpetrators.  The jury found this evidence more believable than Petitioner's account of the events, which was that he was in a car with his girlfriend when  he needed to relieve himself, chose to do so in the same wooded area behind a liquor store at the time when two perpetrators were fleeing from police; and hid in a large pile of telephone poles on top of one of the perpetrators, with a large sum of money in his pocket, out of fear that he would be robbed.   Accordingly this claim shall be dismissed under 28 U.S.C. § 2254(e).

### III. <u>Conclusion</u>

Petitioner was convicted of various counts based upon the jury's examination of direct and circumstantial evidence.  His claims of attorney and prosecutorial error and insufficient evidence do not warrant disturbing prior state court decisions.  For this reason, his Petition shall be dismissed.  A separate Order shall be entered reflecting the foregoing Memorandum.

When a district court dismisses a habeas petition, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Petitioner does not satisfy this standard, and the Court declines to issue a certificate of appealability.

Date: May 12, 2010                    _____/s/_____
                                      Alexander Williams, Jr.
                                      United States District Judge